**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| DEIDRA ROMAINE COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  17-2-RGA-MPT |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

This action arises from the denial of plaintiff's claim for Social Security benefits.

On April 17, 2013, plaintiff filed applications for Social Security Disability benefits

("SSD")[1] under Title II and Supplemental Security Income benefits ("SSI")[2] under Title

XVI of the Social Security Act ("the Act").[3]  In her applications, plaintiff alleged she was

disabled due to a number of physical and mental impairments, with a disability onset of

June 1, 2010.[4]  The claims were denied initially on May 21, 2013, and upon

reconsideration on August 12, 2013.[5]  Following the denials, plaintiff requested a

hearing before an Administrative Law Judge ("ALJ"), which occurred on May 11, 2015,

in New Castle, Delaware.  At the hearing, testimony was provided by plaintiff and an

---

[1] D.I. 10 at 1.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] D.I 6-2 at 21.

impartial vocational expert, Christina Cody.[6]  On June 24, 2015, ALJ Jack Penca, issued a decision denying plaintiff's claims.[7]  Plaintiff requested a review of the decision by the Appeals Council, which denied the review on November 4, 2016.[8]  She then filed a timely appeal with this court.[9]  Presently before the court are the parties' cross motions for summary judgment.[10]  For the reasons that follow, the court will grant defendant's motion for summary judgment.

## II.  BACKGROUND

Plaintiff was born on December 20, 1963.[11]  She has a high school education and has not worked full time since 2010.[12]  She last worked as a general worker/cafeteria aide at Concord High School during the school year.[13]  Her job consisted of preparing and serving food, cleaning the kitchen, and lifting heavy items.[14]  After 2010, plaintiff worked part time for a janitorial service for roughly 3 months.[15]  She claims that she stopped working due to pain in her back, legs, hands, muscle spasms, and carpal tunnel syndrome.[16]  The ALJ found that plaintiff has no relevant previous work experience.[17]

Plaintiff alleged her disability onset date was June 1, 2010.  She has since

---

[6] *Id.*
[7] D.I. 10 at 1.
[8] *Id.*
[9] D.I. 9 at 1.
[10] D.I. 9 and D.I. 13.
[11] D.I 10 at 2.
[12] *Id.*
[13] D.I. 6-6 at 243.
[14] *Id.*
[15] D.I. 6-2 at 44.
[16] D.I. 10 at 11.
[17] *Id.* at 2.

continued to suffer from a combination of both physical and mental impairments that include; a herniated disc, lumbar radiculopathy, anxiety and depression.[18]  Plaintiff contends that these impairments place her function where she is unable to perform at the substantial gainful activity level.[19]  Plaintiff alleges she is disabled under the Act.  To be eligible for disability benefits, plaintiff must not only demonstrate she is disabled within the meaning of §§ 216(i), 223(d), and 1614(a)(3)(A), but additionally, that she meets the insured status requirements of §§ 216(i) and 223.  Plaintiff has sufficiently met the requirements for coverage under §§ 216(i) and 223, and is covered through September 30, 2015.  The remaining issue, is whether plaintiff is disabled under the Act.[20]

## A.    Evidence Presented

Plaintiff has experienced lower back pain dating back to at least February 25, 2000.[21]  Her back pain was mild until 2007, which she managed by nonsteroidal anti-inflammatory drugs and muscle relaxants.[22]  From March 2006 to October 2009, plaintiff made numerous trips to St. Francis Hospital for treatment for chronic back pain.[23]  She complained of lumbosacral pain brought on by heavy lifting at work.[24]

On June 29, 2010, a physical examination performed by plaintiff's family practitioner, Dr. Clement Ogunwande, revealed tenderness in the lumbar spine and

---

[18] D.I. 6-2 at 42.
[19] *Id.*
[20] D.I. 6-2 at 21.
[21] D.I. 10 at 2.
[22] D.I. 7-6, Ex. 14 F at 744.
[23] D.I. 6-7, Ex. 1 F at 258-329.
[24] D.I. 7-6, Ex. 14 F at 744.

paraspinal muscle spasms.[25]  Dr. Ogunwande referred her to physical therapy and

prescribed Percocet.[26]  On August 17, 2010, plaintiff reported that she had ongoing pain

and numbness, despite physical therapy, and was prescribed Percocet and Neurontin.[27]

Throughout the following months, plaintiff experienced varying levels of pain.  At an

October visit, she stated that her pain had somewhat improved, but later in December

2010, she complained of "terrible" pain in her back and right lower extremity, muscle

tightness, accompanied with numbness and tingling.[28]  On February 15, 2011, plaintiff

reported to Dr. Ogunwande that she had increased back and lower right extremity pain

in cold weather and during periods of prolonged standing.[29]

On May 3, 2011, plaintiff was examined by neurosurgeon Hagop L. Der

Krikorian, M.D.  He diagnosed L5 and S1 radiculopathy on the right side, secondary to a

herniated L5-S1 disc.[30]

At a follow up visit on December 1, 2011, Dr. Ogunwande's physical examination

revealed minimal tenderness on palpation and paraspinal muscle tension in the lumbar

spine.[31]  As a result, he prescribed Oxycodone and Motrin and advised plaintiff to return

to Dr. Krikorian.[32]  On April 2, 2012, plaintiff claimed the back and neck pain persisted,

resulting in Dr. Ogunwande's continued prescription of Percocet.  He also referred

---

[25] D.I. 10 at 2.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 3.
[29] *Id.* at 3.
[30] *Id.*
[31] *Id.* at 4.
[32] *Id.* at 4.

plaintiff to pain management.[33]  In August 2012, she was examined by board certified

neurologist, Dr. Grossinger.[34]  His examination revealed restricted range of lumbar

motion with forward flexion and weakness on extension of the right knee and right ankle

on dorsiflexion.[35]  He administered an EMG/NCS, that showed evidence of right L5

radiculopathy.

During a follow up visit with Dr. Grossinger on August 27, plaintiff underwent

lumbar epidural steroid injections for the first time.[36]  In the following months, plaintiff

continued to receive these injections.[37]

Dr. Grossinger, in a spinal impairment questionnaire completed on September

17, 2013, reported that plaintiff's primary symptom was chronic back pain, which began

in the lower back and radiated to the right leg, and was caused by exertion or prolonged

sitting or standing.[38]  He concluded that in an eight hour work day, plaintiff could sit and

stand for a total of three hours each, but must move around for about a half hour before

returning to a seated position.[39]  She could also lift five pounds frequently and ten to

twenty pounds occasionally.[40]

On October 24, 2013, Dr. Ogunwande reported plaintiff could perform sedentary

work only, with standing and walking as needed.[41]  During plaintiff's June 2014 visits,

---

[33] *Id.*
[34] *Id.* at 6.
[35] *Id.*
[36] *Id.*
[37] D.I. 6-13 at 647-668.
[38] D.I. 7-5, Ex. 12 F at 729-735.
[39] *Id.* at 732-734
[40] *Id.* at 732-733
[41] D.I. 10 at 5.

Dr. Ogunwande diagnosed chronic lower back pain and lumbar spine radiculopathy, with an MRI showing progressive degenerative changes at L5-S1.[42]

On July 2, 2014, plaintiff was evaluated by Richard Jaskewich, PA-C at Concord Medical Chiropractic Neurology, for complaints of lower back pain and stiffness, accompanied with radicular pain in the right leg.[43]  As a result of his examination, Dr. Jaskewich diagnosed cervicalgia, carpal tunnel syndrome, thoracic spine pain, lumbago/low back pain, and sacroiliitis.  She was treated with a right sciatic nerve block injection.[44]  A week later, plaintiff returned for lumbar/gluteal trigger point injections with Dr. Jaskewich, who also prescribed a lumbar brace.[45]  In the months that followed, Dr. Jaskewich performed multiple nerve block, joint, or trigger point injections on the plaintiff.[46]  On January 4, 2015, he diagnosed sciatica, osteoarthritis of the pelvis/hip/thigh, lower leg pain, hip pain, sacroiliitis, and lumbalgia, and continued the injection series.[47]

From 2010 to 2014, plaintiff was prescribed Percocet, Gabapentin, Flexeril, Oxycodone, Motrin, Promethazine, and Baclofen by Dr. Ogunwande, and Mirtazapine and Buspirone by Dr. Hasan.[48]  In addition to medication, she underwent lumbar epidural steroid injections, bilateral lumbar facet medial branch injections at L3-4, L4-5, and L5-S1 by Dr. Grossinger.  She also was treated by Dr. Jaskewich with right sciatic

---

[42] *Id.* at 5.
[43] *Id.* at 8.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] D.I. 6-6, Ex. 12 E at 245-250.

nerve block injections, bilateral lumbar trigger point injections, joint cortisone injections, a series of additional trigger point injections and was prescribed a lumbar brace. In a letter to the National Social Security Disability Advocates dated June 12, 2015, Dr. Ogunwande stated that he saw plaintiff on December 31, 2014 for her chronic back pain.[49] Throughout this treatment, plaintiff maintained the back pain with radiation to lower extremities along with paresthesia, continued unimproved.[50] As a result, Dr. Ogunwande noted that plaintiff could not tolerate any sedentary work situations.[51]

Coupled with her physical impairments, plaintiff attends sessions with her psychiatrist Fawzia Hasan M.D. According to his therapy notes, plaintiff received treatment for a cannabis dependency, mood disorder, cocaine abuse, anxiety, and depression.[52]

Dr. Hasan performed a number of tests through mental status examinations and assessments. He describes plaintiff as suffering from depressed mood, as dysphoric and tearful, with normal psychomotor activity movements.[53] His findings include that plaintiff possesses concrete thinking, has poor judgment, has the ability to maintain focus and attention, and seeks immediate gratification.[54]

Plaintiff also has previous and continued drug usage against medical advice. She has used crack cocaine off and on for the past seventeen years, with the last use allegedly in 2010. Plaintiff, however, has smoked marijuana on a daily basis for the

---

[49] D.I. 7-16, Ex. 21 F at 1040.
[50] *Id.*
[51] D.I. 7-16, Ex. 21 F at 1040.
[52] *See generally,* D.I. 7-5, Ex. 11 F at 718-728 and D.I. 6-11, Ex. 5 F at 530-553.
[53] *Id.*
[54] D.I. 7-5, Ex. 11 F at 727.

past twenty-three years and occasionally drinks alcohol.[55]

Plaintiff's records were reviewed by non-treating state medical consultants Michael H. Borek D.O., and later by Vinod K. Kataria M.D.[56] Both medical consultants determined plaintiff's subjective statements as not fully credible. Noted in Dr. Borek's findings, plaintiff alleges disability on the basis of physical impairments and also complains of memory problems. Plaintiff is receiving mental health treatment for depression. The records illustrate a history of substance abuse and outpatient mental health treatment for a mood disorder.[57] The progress notes revealed a favorable response to treatment, and indicate that her condition has remained stable over time.

Overall, Drs. Borek and Kataria found her mental condition and concentration skills intact. Her social skills are unimpaired, and in contrast to her subjective complaints, there is no evidence of any memory impairment.[58] They concluded her subjective comments are not fully supported, since she reports no difficulty with personal care needs and she cares for her granddaughter.[59]

**B.    Hearing Testimony**

1. **Plaintiff's Testimony**

At the administrative hearing on May 11, 2015, plaintiff testified to her background, work history, and alleged disability.[60] Plaintiff has custody of her five year

---

[55] D.I. 6-11 Ex. 5 F at 530.
[56] *See generally*, D.I. 6-3, Ex. 1 A-8 A at 61-112.
[57] D.I 6-3, E.x. 5 A at 107.
[58] *Id.*
[59] *Id.*
[60] D.I. 6-2 at 40.

old granddaughter and raises her with the assistance of her daughter.[61] Plaintiff's daughter also assists with cleaning, cooking, laundry and shopping. Plaintiff testified she can comfortably lift and carry items weighing up to fifteen pounds and do light laundry, but claimed that climbing stairs is difficult.[62]

Plaintiff has a high school education and last worked full time in 2010 as a general worker.[63] She testified that in the previous 15 years, she was employed as a cafeteria aide doing similar work.[64] Plaintiff has not sought full time employment since 2010, but she worked part time on two separate occasions.[65] Plaintiff reasoned that she stopped working as a dietary aide due to a slipped disc in her back, which causes pain in her back, legs, and hands.[66] She maintained that this pain prevented her from performing her job and is the reason she has not sought subsequent employment.

Plaintiff claimed that the pain she experiences is sharp, similar to being stuck with needles.[67] The pain in her neck and shoulders varies throughout the day, but the back pain is persistent. Although plaintiff denied taking medication for pain, she undergoes pain management where she receives injections.[68] Plaintiff testified that the pain injections typically last between three to four days.[69] During her testimony, plaintiff requested to stand due to pain in her back and legs. She described pain occurs when

---

[61] *Id.* at 46.
[62] *Id.* at 50.
[63] *Id.* at 43.
[64] *Id.* at 44.
[65] *Id.*
[66] *Id.* 6-2 at 45.
[67] *Id.* at 48.
[68] *Id.* at 49.
[69] *Id.*

she sits for roughly twenty minutes, which requires her to stand to stretch her legs.[70] Plaintiff, however, further claimed that she loses balance after standing for ten to fifteen minutes.[71]

Plaintiff testified she is only able to walk half a block before she must rest.  Since 2010, the pain has increased requiring her to lie down for about a half an hour every day.  She has difficulty sleeping through the night and only sleeps about four hours.  Night sweats due to menopause also interfere with her sleep.[72]  Plaintiff claims she is depressed and has crying episodes because of her son's incarceration and dealing with her mother's depression.[73]  She takes medication for depression, which helps with her mood swings.[74]

Plaintiff admitted using crack cocaine in 2013, because she was "at a depression mode" in her life.[75]  She confirmed using marijuana to deal with her muscle pain and muscle spasms.  Additionally, plaintiff testified that she suffers from other cognitive difficulties, primarily with memory and concentration.  Finally, plaintiff asserted that she has breathing problems due to life-long bronchitis, which has worsened since 2010.

### 2. **Vocational Expert's Testimony**

Testimony was provided at the hearing by vocational expert, Christina Cody.[76]  Ms. Cody has been a Senior Vocational Rehabilitation Counselor for the Delaware

---

[70] *Id.*
[71] *Id.* at 50.
[72] *Id.* at 52.
[73] *Id.* at 51.
[74] *Id.* at 52.
[75] *Id.* at 54.
[76] *Id.* at 55.

Division of Vocational Rehabilitation since 1998.[77]  She provides coordinative and rehabilitative services for physically and mentally disabled clients seeking employment. Ms. Cody characterized plaintiff's past work history at the medium exertional level, with a specific vocational preparation level of 2.[78]  She addressed hypothetical situations posed by the ALJ.

The ALJ asked whether an individual of plaintiff's age, education and work history, could perform work at a light exertional level, and whether that same individual was capable of:

> occasionally climbing ramps and stairs but never ladders, ropes and scaffolds, who can occasionally balance, stoop, kneel, crouch and crawl, who can have occasional exposure to extreme cold, vibration and hazards and who can perform simple, routine and repetitive tasks with no fast pace or strict production requirements, and with occasional interaction with coworkers and the public.[79]

Ms. Cody testified that an individual with these limitations would be able to perform jobs at the light level of exertion.  Those positions include a folder, a final inspector, or an inserter.[80]  These three unskilled positions are all categorized under the light level of exertion, and account for at least 300,500 jobs in the national economy.[81]

## C.    The ALJ's Findings

Based on the medical evidence and testimony provided in the 2015 hearing, the ALJ determined plaintiff was not disabled, and therefore, ineligible for Social Security Disability Insurance benefits and Supplemental Security Income.  The ALJ's findings

---

[77] D.I. 6-6 at 251.
[78] D.I. 6-2 at 56.
[79] *Id.* at 56-57.
[80] *Id.* at 58.
[81] *Id.* at 31.

from the 2015 hearing, the disability decision at issue, are summarized as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2.    The claimant has not engaged in substantial gainful activity since June 1, 2010, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    The claimant has the following severe impairments: degenerative lumbar disc disease and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she cannot climb ropes, ladders or scaffolds, and she can only occasionally climb ramps or stairs.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She can tolerate occasional exposure to extreme cold, vibration, and hazards.  She can perform simple routine repetitive tasks in a setting where she does not have to work at a fast pace and is not subject to strict production requirements.  She can occasionally interact with coworkers and the public.

6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on December 20, 1963, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.968).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568

and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).[82]

## III.     STANDARD OF REVIEW

### A.     Motion for Summary Judgment

Each party moved for summary judgment.[83]  In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[84]  If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[85]

This standard does not change merely because there are cross-motions for summary judgment.[86]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and

---

[82] D.I. 6-2 at 23-31.

[83] D.I. 10 (Plaintiff's motion for summary judgment); D.I. 14 (Defendant's motion for summary judgment).

[84] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[85] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

[86] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

determination whether genuine issues of material fact exist.[87]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[88]

### B.     Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision.  The Commissioner's factual decisions are upheld if supported by substantial evidence.[89]  Substantial evidence means less than a preponderance of the evidence, but more than a mere scintilla of evidence.[90]  As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[91]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[92]  The court's review is limited to the evidence that was actually presented to the ALJ.[93]  The Third Circuit has explained that a:

---

[87] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[88] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

[89] 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Medical Center v. Heckle*, 806 F .2d 1185, 1190 (3d Cir. 1986).

[90] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

[91] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[92] *Monsour*, 806 F.2d at 1190.

[93] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001)

single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion.[94]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[95] Even if the court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence.[96]

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[97] In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[98] The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[99] Thus, this court's review is limited to the four corners of the ALJ's

---

[94] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[95] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[96] *Monsour*, 806 F .2d at 1190-91.
[97] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[98] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).
[99] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001).

decision.[100]

## C.    ALJ's Disability Determination Standard

The Supplemental Social Security Income (SSI) program was enacted in 1972 to assist "individuals who have attained the age of 65 or are blind or disabled" by setting a minimum income level for qualified individuals.[101]  A claimant – in order to establish SSI eligibility – bears the burden of proving that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of or not less than twelve months."[102]  Moreover, "the physical or mental impairment or impairments must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy."[103]  Furthermore, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are evidenced by medically acceptable clinical and laboratory diagnostic techniques.[104]

### 1.    Five-Step Test.

The Social Security Administration uses a five-step sequential claim evaluation

---

[100] *Cefalu v. Barnhart*, 387 F. Supp.2d 486, 491 (W.D. Pa. 2005).
[101] *Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982 ed.)).
[102] 42 U.S.C. § 423(d)(1)(A).
[103] 42 U.S.C. § 423(d)(2)(A).
[104] 42 U.S.C. § 423(d)(3).

process to determine whether an individual is disabled.[105]

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. If a claimant is found to be engaged in substantial activity, the disability claim will be denied.
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. The claimant bears the burden of demonstrating an inability to return to her past relevant work. If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
> At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step.[106]

If the ALJ determines that a claimant is disabled at any step in the sequence, the analysis ends.[107]

## 2.     Weight Afforded Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ

---

[105] 20 C.F.R. §416.920(a); *see also Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).
[106] *Plummer*, 186 F.3d at 427.
[107] 20 C.F.R § 404.1520(a)

accord treating physicians' reports great weight."[108]  Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on record.[109]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[110]  If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[111]  If an opinion is rejected, then the ALJ must provide an explanation for the rejection.  However, the explanation need not be exhaustive, but rather "in most cases, a sentence or short paragraph would probably suffice."[112]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion; rather, it is an opinion on an issue reserved to the ALJ because it is a finding that is dispositive of the case.[113]  Therefore, only the ALJ can make a disability determination.

---

[108] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)
[109] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).
[110] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).
[111] *Plummer*, 186 F.3d at 429.
[112] *Cotter v. Harris,* 650 F.2d 481, 482 (3d Cir. 1981).
[113] *See* 20 C.F.R. § 416.927 (e)(1).

### 3. Evaluation of Subjective Accounts of Pain[114]

Statements about the symptoms alone never establish the existence of any impairment or disability.[115]  The Social Security Administration uses a two-step process to evaluate existence and severity of symptoms.

#### a. Step One, Existence of Pain

First, the ALJ must find a medically determinable impairment – proven with medically acceptable clinical and laboratory diagnostic data – that could reasonably be expected to produce the claimant's symptoms.  Otherwise, the ALJ cannot find the applicant disabled, no matter how genuine the symptoms appear to be.

This step does not consider the intensity, persistence, and limiting effects of the symptoms on the claimant:  it only verifies whether a medical condition exists that could objectively cause the existence of the symptom.

Analysis stops at this step where the objectively determinable impairment meets or medically equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the claimant is considered disabled *per se.*

#### b. Step Two, Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  At this step, the ALJ must consider the

---

[114] *See* 20 C.F.R §§ 416.928-29; *see also* SSR 96-7p.
[115] A symptom is an individual's own description of physical or mental impairments such as pain, fatigue, shortness of breath and other complaints.  *see* SSR 96-7p.

entire record, including medical signs, laboratory findings, the claimant's statements about symptoms, any other information provided by treating or examining physicians and psychologists, and any other relevant  evidence in the record, such as the claimant's account of how the symptoms affect her activities of daily living and ability to work.[116]

Where more information is needed to assess a claimant's credibility, the ALJ must make every reasonable effort to obtain available information that would shed light on that issue.  Therefore, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

(i)  The applicants' account of daily activities;

(ii)  The location, duration, frequency, and intensity of pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v)  Treatment, other than medication, the applicant receives or has received for relief of pain or other symptoms;

(vi)  Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning functional limitations and restrictions due to pain or

---

[116] 20 C.F.R. § 404.1529.

other symptoms.[117]

### 4.    Factors in Evaluating Credibility[118]

A claimant's statements and reports from medical sources and other persons with regard to the seven factors, noted above, along with any other relevant information in the record, provide the ALJ with an overview of the subjective complaints, and are elements to the determination of credibility.

Consistency with the record, particularly medical findings, supports a claimant's credibility.  Since the effects of symptoms can often be clinically observed, when present, they tend to lend credibility to a claimant's allegations.  Therefore, the adjudicator should review and consider any available objective medical evidence concerning the intensity and persistence of pain or other symptoms in evaluating the claimant's statements.

Persistent attempts to obtain pain relief, increasing medications, trials of different types of treatment, referrals to specialists, or changing treatment sources may indicate that the symptoms are a source of distress and generally support a claimant's allegations.  An applicant's claims, however, may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.

Findings of fact by state agency medical and psychological consultants and other physicians and psychologists regarding the existence and severity of impairments and

---

[117] 20 C.F.R. § 404.1529
[118] SSR 16-3p.

symptoms, and opinions of non-examining physicians and psychologist are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one element in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and may use it at each subsequent step.

The decision must clearly explain – provide sufficiently specific reasons based on the record – to the claimant and any subsequent reviewers, the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when evaluating the credibility of her testimony or statements.[119] A claimant's testimony is accorded substantial credibility when she has a long work history, which demonstrates it is unlikely that, absent pain, she would have ended employment.[120]

### 5. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which requires the ALJ to apply informed judgment.[121] "At

---

[119] 20 C.F.R. § 404.1529(a)(3)
[120] *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984)(citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981)). In *Podedworny*, the claimant worked for thirty-two years as a crane operator for one company. He had a ninth grade education and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.
[121] SSR 83-20.

the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."[122]

## IV.    DISCUSSION

### A.    Parties' Contentions

In her appeal, plaintiff argues the ALJ failed to properly weigh the medical opinion evidence provided by treating physicians, Drs. Ogunwande and Grossinger. She contends that the ALJ's conclusory findings were based on her subjective statements, rather than the medical findings.[123]  Furthermore, plaintiff claims the ALJ failed to properly determine her residual functional capacity ("RFC").  She argues that there is no medical evidence of record showing she has been able to perform light exertional work, and the ALJ's decision was a deviation from the non-examining state agencies.[124]  Plaintiff further urges the ALJ failed to properly evaluate her credibility. She refutes the ALJ's findings, arguing his determination is fatally flawed.[125]  Plaintiff contends that the ALJ relied on his own "lay interpretation" of the record, rather than the opinions of the physicians on the record.[126]

Alternatively, defendant contends the ALJ reasonably concluded that plaintiff was not disabled under the stringent requirements of the Act and Regulations.  Defendant argues that the ALJ appropriately applied the sequential evaluation process in his

---

[122] *Id.*
[123] D.I. 10 at 14.
[124] *Id.* at 16.
[125] *Id.*
[126] *Id.*

determination at step five of the evaluation process, that plaintiff could perform other work that existed in significant numbers in the national economy.[127]  Defendant further counters that the ALJ appropriately culled the record and crafted the RFC and his findings are amply supported by the record.  Defendant points out that the ALJ meticulously analyzed all medical evidence and followed the regulations precisely.[128]  Furthermore, defendant maintains that the ALJ appropriately evaluated plaintiff's subjective complaints in light of the record evidence.  Defendant notes that the ALJ credited many of plaintiff's allegations by assessing a limited range of light work, with postural, environmental, and mental restrictions, that do not rise to the level of work preclusive limitations, and the ALJ's multi-factored assessment of plaintiff was greatly supported by the record.[129]

### B. Disability Analysis

Title II of the Social Security Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[130]  In order to qualify for disability insurance benefits, a claimant must establish she was disabled prior to the date she was last insured.[131]  A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death

---

[127] D.I. 14 at 10.
[128] *Id.*
[129] *Id.* at 19.
[130] *Bowen*, 482 U.S. at 140.
[131] 20 C.F.R. § 404.131.

or has lasted or can be expected to last for a continuous period of at least 12 months.[132] To be disabled, the severity of the impairment must prevent return to previous work, and considering age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[133]

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[134] If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner does not review the claim further.[135] At the first step, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is so engaged, a finding of non-disabled is required.[136] If the claimant is not so engaged, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. If the claimant is not suffering from either, a finding of non-disabled is required.[137]

If the claimant's impairments are severe, the Commissioner, at the third step. compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work.[138] When a claimant's impairment or its equivalent matches an impairment in the listing, the claimants is

---

[132] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).
[133] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).
[134] 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d Cir. 1999).
[135] 20 C.F.R. § 404.1520(a)(4).
[136] 20 C.F.R. § 404.1520(a)(4)(i).
[137] 20 C.F.R. § 404.1520(a)(4)(ii).
[138] 20 C.F.R. § 404.1520(a)(4)(iii); *see also Plummer*, 186 F.3d at 428.

presumed disabled.[139]  If a claimant's impairments, either singularly or in combination, fail to meet or medically equal any listing, the analysis continues to step four and five.[140] At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work.[141]  A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [her] impairment(s)."[142]  "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work."[143]

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude adjusting to any other available work.[144]  At this final step, the burden is on the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[145]  In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments and often seeks the assistance of a vocational expert.

### 1.    Weight Accorded to Medical Opinion Evidence

It is the exclusive responsibility of the ALJ to weigh the evidence in the record as a whole in making a disability decision.[146]  The evidence presented to the ALJ may

---

[139] 20 C.F.R. § 404.1520(a)(4)(iii).
[140] 20 C.F.R. § 404.1520(e).
[141] 20 C.F.R. § 404.1520(a)(4)(iv); *see also Plummer*, 186 F.3d at 428.
[142] *Fargnoli*, 247 F.3d at 40.
[143] *Plummer*, 186 F.3d at 428.
[144] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.
[145] *Id.*
[146] See 20 CFR 404.1527(e)(2).

contain differing medical opinions from both treating and non-treating physicians, as well as other testimony.[147]  Normally, the evidence presented by the treating physician is given controlling weight as that individual may be most acquainted with the medical history of the claimant.  However, in circumstances where the treating physician's opinion is not consistent with the record as a whole or is not well supported by "medically acceptable clinical and laboratory diagnostic techniques", an ALJ may reasonably accord little weight to the treating physician's opinion.[148]  Plaintiff argues that the ALJ failed to properly weigh the medical opinion from treating physicians Dr. Ogunwande and neurologist, Dr. Grossinger.  This court finds that the proper weight was given to both medical opinions, and the evidence supports this decision.

### a.    Dr. Ogunwande

The ALJ assigned little weight to the opinion of treating physician Dr. Ogunwande.  Dr. Ogunwande determined that plaintiff's prognosis was good in the absence of any major back injury, and despite not being pain free, she would only experience levels of mild back pain.[149]  In his medical judgment, she is probably not capable of any job involving heavy lifting, but is certainly capable of sedentary work with time allotted for standing and walking if needed.[150]  Plaintiff argues, since Dr. Ogunwande's opinions are based on appropriate medical findings and are uncontradicted by other substantial evidence, his assessment should have been

---

[147] See 20 CFR 404.1512.
[148] See 20 CFR 404.1527(c).
[149] D.I. 7-6, Ex. 14 F at 746.
[150] *Id.*

granted controlling weight.[151]

The ALJ accepted Dr. Ogunwande's findings that plaintiff was capable of occasional lifting and carrying up to twenty pounds, and also accepted his assessment that plaintiff is able to use her upper extremities without any limitations, refuting her claims regarding carpal tunnel syndrome in her right hand. However, the ALJ gave little weight to Dr. Ogunwande's lack of support or explanation for why intermittent pain would keep plaintiff from standing and walking for more than two hours in a single workday, or limit her to a total of six hours of daily activity. The ALJ concluded Dr. Ogunwande heavily relied on plaintiff's subjective symptoms, and saw no medically determinable impairment that would prevent plaintiff from regular attendance at a job that falls within her residual functional capacity level.[152] The ALJ noted that the opinion of Dr. Ogunwande lacked support within his own record, and that he provided contradicting opinions throughout his reports.[153] The ALJ afforded appropriate weight to Dr. Oguwande's findings.

### b.    Dr. Grossinger

The ALJ assigned little or no weight to the opinions of treating neurologist, Dr. Grossinger. In the spinal impairment questionnaire, a form report provided by plaintiff's counsel, Dr. Grossinger noted that plaintiff has lumbar radiculopathy and suffers from chronic pain despite treatment.[154] He stated that she would need unscheduled breaks

---

[151] D.I 10 at 16.
[152] D.I. 6-2 at 29.
[153] D.I. 14 at 13.
[154] D.I. 6-2 at 29..

throughout the work day and would miss work several times a month.  Additionally, she

would be limited to three hours of sitting and walking in a single workday and also prone

to lose concentration during work because of her pain.  Plaintiff maintains that Dr.

Grossinger's opinions should have also been assigned controlling weight.[155]

The ALJ appropriately afforded little or no weight to Dr. Grossinger's opinions.[156]

In his determination, the only abnormal findings that Dr. Grossinger reported were:  mild

to moderate limitation of motion, positive straight leg raising sign, and MRI and

electrodiagnostic studies showing disc disease with radiculopathy.[157]  The ALJ gave Dr.

Grossinger's assessment of plaintiff no probative weight for his failure to explain why

these abnormal findings would prevent plaintiff from performing any non-physically

demanding work.  Furthermore, he failed to explain why these findings, unaccompanied

by gait abnormality or significant motor weakness, would keep plaintiff from work that is

not physically demanding.[158]

### c.    Drs. Borek and Kataria

Plaintiff's records were reviewed by state agency physicians, Drs. Borek, and

Kataria.  Dr. Borek assessed that plaintiff could occasionally lift and/or carry twenty

pounds; frequently lift and/or carry ten pounds; sit about six hours in an eight hour

workday; and stand and/or walk about three hours in an eight hour workday.  He noted

that the medical evidence of record did not appear to corroborate plaintiff's need for

---

[155] D.I. 10 at 16.
[156] D.I. 14 at 14.
[157] D.I. 6-2 at 29.
[158] *Id.*

ambulatory assistance as she alleged.  Upon reconsideration, Dr. Kataria reviewed

plaintiff's records and affirmed Dr. Borek's findings.  The ALJ considered the opinions

from the non-examining state physicians, and found the residual functional capacity was

generally consistent with the most recent evaluation for her physical ability, but

disagreed with the consultant's ruling of a nonsevere mental disorder.  The ALJ found

that the record did not support a psychological disability, but plaintiff's continued low

mood supported that she would need work that is not mentally nor emotionally

challenging.[159]  The ALJ further disagreed with the consultants that plaintiff was limited

to sedentary exertion, due to conflicting testimony by plaintiff and Dr. Ogunwande.

### d.    Dr. Hasan

The ALJ assigned no weight to Dr. Hasan's responses to a form from the

Division of Social Services, because it failed to specify what work functions plaintiff can

and cannot perform, and provided no link between the assessed disability and actual

abnormal findings on plaintiff's mental status.[160]  The ALJ determined that Dr. Hasan's

findings were "at best, . . . a conclusory assessment on the issue of disability, which is

reserved to the Commissioner of Social Security."[161]

### 2.    RFC Assessment

Plaintiff alleges the ALJ failed to properly assess her residual functional capacity.

An RFC is an individual's ability to perform in a work setting despite impairments and

---

[159] *Id.* at 30.
[160] *Id.* at 29.
[161] *Id.* at 30.

limitations.[162] In making this finding, the ALJ must consider all of the claimant's impairments, including those that are non-severe. Although the ALJ may weigh the credibility of the evidence, he must indicate the evidence which he rejects and his reason(s) for discounting such evidence.[163]

In the current matter, the ALJ found that plaintiff possessed the residual functional capacity to perform light work with some additional limitations. The Act defines light work when it:

> involves lifting no more than twenty pounds at a time with frequent or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range or light work, you must have the ability to do substantially all of these activities.[164]

Furthermore, the ALJ specifically found plaintiff could work at a level consistent with the regular and continuing performance of substantial gainful activity. Moreover, he determined her residual functional capacity as generally consistent with the most recent evaluation by state agency medical consultants regarding plaintiff's physical ability.

### 3. Plaintiff's Credibility

Plaintiff additionally claims the ALJ failed to properly evaluate her credibility. The ALJ administers a two-step process in which it must first be determined whether an underlying medically determinable physical or mental impairment could reasonably

---

[162] 20 C.F.R. § 404.1545.
[163] *Plummer,* 186 F.3d at 429.
[164] 20 C.F.R. § 404.1567(b).

produce the plaintiff's pain or other symptoms.[165]  The ALJ stated that plaintiff's spinal disorder and depressive disorder are capable of producing symptoms of the type the she alleges.[166]

Once the record confirms the impairments that could reasonably produce a plaintiff's pain or other symptoms, the ALJ addresses the second step of the process. Here, he must evaluate the intensity, persistence, and limiting effects of a plaintiff's symptoms to determine the extent to which they limit her functioning.[167]  In the instant matter, the ALJ did not accept plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms and found her symptoms failed to overcome the RFC assessment.  Because of the lack of clinical evidence of severely limiting disc disease, there was no showing of a loss of motion in the lumbar spine or anywhere else.[168]

With plaintiff's absence of a substantial work history prior to the alleged onset date, the ALJ did not assume that her long absence was attributable solely to her medical issues.[169]  Her daily use of marijuana against medical advise was viewed as a deterring factor to seeking employment, as was caring for her granddaughter.  The ALJ stated that given these factors, it is not apparent that plaintiff would be working now, even if she did not have any medically determinable impairments.[170]  The absence of

---

[165] D.I. 6-2 at 27.
[166] *Id.*
[167] *Id.*
[168] D.I. 6-2 at 28.
[169] *Id.* at 27.
[170] *Id.*

evidence demonstrating disuse atrophy, marked reduction of activities of daily living, significant weight change, or symptoms requiring increasingly aggressive medical or surgical management, led the ALJ to the appropriate conclusion, that plaintiff's allegations were insufficient to prove an inability to perform light work.[171]  The ALJ also credited a number of plaintiff's allegations, by determining that she was capable of doing light work with the additional limitations specified in his opinion.[172]

Therefore, the court determines the ALJ based his assessment upon substantial evidence presented in the record.

## V.     Conclusion

For the foregoing reasons, I recommend that:

(1) Plaintiff's motion for summary judgment (D.I. 9) be denied; and

(2) Defendant's motion for summary judgment (D.I. 13) be granted.

This Report and Recommendation is filed pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

---

[171] *Id.*
[172] *Id.* at 30

Date:  October 23, 2017                    /s/ Mary Pat Thynge
                                           Chief U.S. Magistrate Judge